**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**UNITED STATES OF AMERICA,**

**vs.**                                         **Case No.  5:06cr83-RS**
                                                **Case No.  5:08cv135-RS/WCS**
**MELVIN JEROME WYMES,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Pending in this case is an amended motion to vacate and set aside a sentence filed pursuant to 28 U.S.C. § 2255.  Doc. 49.  The United States filed a response and exhibits.  Docs. 55 and 53.  Defendant's former attorney also filed a response.  Doc. 79.

Counsel was appointed for Defendant and an evidentiary hearing was held on March 10, 2010.  Doc. 80.  Counsel provided oral argument at the end of the hearing.

**Legal standards governing this motion**

Ineffective assistance of counsel claims are governed by Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984).  Under the two part test of Strickland, Defendant must demonstrate both deficient performance and prejudice to the outcome.

A claim that counsel failed to file a notice of appeal is determined by application of the Strickland formula.  Roe v. Flores-Ortega, 528 U.S. 470, 477,120 S.Ct. 1029, 1034, 145 L.Ed.2d 985 (2000).  The issue of whether counsel was ineffective for failing to file a notice of appeal, like all other Strickland questions, "will turn on the facts of a particular case."  528 U.S. 477, 120 S.Ct. 1034-1035 (citation to Strickland omitted).

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.*, 120 S.Ct. at 1035. "[W]hen counsel fails to file a requested  appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit."  *Id.*, *quoting*, Peguero v. United States, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999).

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.[1] *If counsel has consulted with the defendant, the question of deficient performance is easily answered:  Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. . . .  If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question:  whether counsel's failure to consult with the defendant itself constitutes deficient performance.*

*Id.* at 478, 120 S.Ct. at 1035 (emphasis added).

The Court was unable to say that, "as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily

---

[1] Although the Court did not say so, it would seem logical that attorney error as defined by Strickland could occur in the course of this consultation.

unreasonable, and therefore deficient." *Id.* at 479, 120 S.Ct. at 1036 (emphasis by the

Court). The Court said that where there has been a guilty plea, the sentence was the

one expected, and the sentencing court has explained the defendant's appeal rights, "it

would be difficult to say that counsel is 'professionally unreasonable' . . . as a

constitutional matter, in not consulting with such a defendant regarding an appeal." *Id.*

The Court felt that an attorney might reasonably decide not to repeat the information

about the right to appeal if the court has done so clearly. *Id.* at 480, 120 S.Ct. at 1036.

The Court then said:

> We . . . hold that counsel has a constitutionally-imposed duty to consult
> with the defendant about an appeal when there is reason to think either (1)
> that *a rational defendant would want to appeal* (for example, because
> there are nonfrivolous grounds for appeal), or (2) *that this particular
> defendant reasonably demonstrated to counsel that he was interested in
> appealing.* In making this determination, courts must take into account all
> the information counsel knew or should have known. . . . Although not
> determinative, a highly relevant factor in this inquiry will be whether the
> conviction follows a trial or a guilty plea, both because a guilty plea
> reduces the scope of potentially appealable issues and because such a
> plea may indicate that the defendant seeks an end to judicial proceedings.
> Even in cases when the defendant pleads guilty, the court must consider
> such factors as whether the defendant received the sentence bargained
> for as part of the plea and whether the plea expressly reserved or waived
> some or all appeal rights. Only by considering all relevant factors in a
> given case can a court properly determine whether a rational defendant
> would have desired an appeal or that the particular defendant sufficiently
> demonstrated to counsel an interest in an appeal.

*Id.* at 480, 120 S.Ct. at 1036 (emphasis added).

If attorney error is shown, the likelihood of success on appeal need not be

demonstrated. *Id.* at 483-484, 120 S.Ct. at 1038. The only prejudice that must be

shown is that "that there is a reasonable probability that, but for counsel's deficient

failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484,

120 S.Ct. at 1038. "To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id.* at 486, 120 S.Ct. at 1039. On the other hand, a defendant need not "demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal." *Id.* at 486, 120 S.Ct. at 1040. Instead, a defendant must show that, "but for counsel's deficient conduct, he would have appealed." *Id.*

**Evidence from the hearing**

Defendant was charged with possession of a firearm having been convicted on August 17, 1989, with possession of cocaine; on October 5, 1993, of burglary of a structure and grand theft; and on June 5, 1997, of carrying a concealed firearm, felon in possession of a firearm, and three offenses of sale of cocaine. Doc. 1. Defendant testified that from the beginning, he thought that the conviction for three sales of cocaine should not count three times, and he so informed his attorney, Thomas Cassidy. Defendant reasoned that these convictions all occurred at the same time. He disputed the relevance of the other convictions as well. Defendant said that Cassidy said he would look into it.

Defendant made several Rule 11 proffers in an attempt to receive a 5K1.1 motion prior to sentencing. He did not receive one. Defendant was sentenced to 211 months on April 11, 2007. Docs. 38-39.

Defendant said that just after the district judge told him that he had a right to appeal the sentence imposed, he turned to Cassidy and told him that he wanted to appeal the sentence. He said that Cassidy told him to be quiet, that he would anger the judge. Defendant later said on cross examination that Cassidy said nothing when he told him that he wanted to appeal, but he thought that Cassidy must have heard him.

Cassidy testified that he told Defendant that he had three prior qualifying felonies and faced a sentence of 15 years to life unless he received a substantial assistance motion. He said that he explained to Defendant that the three cocaine sales all were qualifying felonies because these were different offenses. He said that he gave the presentence report to Defendant about a week before the sentencing, and that report calculated a minimum guidelines range of 168 months, but he explained to Defendant that the statutory minimum of 180 months applied, absent a substantial assistance motion.

Cassidy said that Defendant never asked him to file an appeal. He said that right after sentencing, he talked with Defendant, the prosecutor (Michael Simpson), and the agent, about Defendant's chance to earn a Rule 35 motion. Cassidy said that he then left the courtroom and went to the holding cell area and talked with Defendant alone. He said that at that time, he told Defendant that an appeal would not work and that the better strategy would be to try to earn a Rule 35 motion. Cassidy said that he told Defendant that filing an appeal would foreclose the opportunity to cooperate. Cassidy said that he told Defendant that if he decided he wanted to appeal instead, he should get back in touch with Cassidy.

Cassidy's recollection is corroborated by a note his has in his file. The note, dated April 11, 2007, reads in part: "Advised client that appeal will jeopardize possibility of Rule 35. He will get back to me." Doc. 79, p. 2.

Defendant said that he could not call Cassidy's office because the jail would only permit outgoing collect calls and Cassidy's office refused to accept collect calls. Defendant admits that the jail provided prisoners with paper, pens, envelopes, and stamps, and he could have written to Cassidy.

Cassidy said that his office routinely accepts collect calls from incarcerated clients. He said that his paralegal especially would have accepted a collect call from Defendant during the ten day period to file an appeal since the appeals period was calendared and important. Cassidy said that he heard nothing more from Defendant about filing an appeal.

The plea agreement, signed by Defendant, advised Defendant that he faced a minimum mandatory 15 year term and a maximum sentence of life in prison. Doc. 33, p. 1; D. Ex. 2. Defendant testified that he read his plea agreement and knew what was in it. The statement of facts, signed by Defendant, represented that the Government was prepared to prove that Defendant had been convicted of burglary of a structure and of three offenses of sale of cocaine. Doc. 32, p. 1; D. Ex. 3. The three offenses for conviction of sale of cocaine, a second degree felony in violation of FLA. STAT. § 893.13(1)(a)(1), were charged in three separate cases, case numbers 95-193-CF (May 31, 1995), 95-194-CF (May 26, 1995), and 95-195-CF (a second offense on May 26, 1995). Doc. 53, pp. 24, 33, 43, 53. A single judgment was entered on June 5, 1997,

and Defendant received separate judgments and concurrent 22 month sentences for these sale of cocaine offenses. *Id.*, pp. 25, 38, 48, 58.

**Findings of Fact**

Defendant was aware that he would be sentenced to at least 180 months if he did not receive a substantial assistance motion. This was in the plea agreement.[2] Cassidy told Defendant that he had three qualifying convictions, and that the three convictions for sales of cocaine would count. Defendant's strategy was to try to receive a substantial assistance motion to avoid the minimum 180 month sentence.

Defendant's testimony about telling Cassidy to file an appeal was in conflict. Defendant was vague about when this happened, and he both said that Cassidy told him to be quiet and that Cassidy said nothing. This detracts from the credibility of his memory. Cassidy said that Defendant never told him to file an appeal, and his notes confirm what actually happened. Cassidy's testimony is more credible. Defendant did not tell Cassidy to file an appeal.

Immediately after sentencing, Cassidy and Defendant talked briefly with Simpson and the case agent about a possible Rule 35 motion. After that, Cassidy talked privately with Defendant about whether to take an appeal. Cassidy advised Defendant that taking an appeal would jeopardize his efforts to earn a Rule 35 motion, and he told Defendant to get back to him within the ten days if he wanted to appeal. Defendant could have reached Cassidy by making a collect telephone call. I find as more credible than Defendant's testimony the testimony of Cassidy that Cassidy's office accepts

---

[2] It probably was told to him at the plea colloquy. It usually is. That hearing has not been transcribed.

collect telephone calls from his clients, especially during the appeal period. Had that failed, Defendant could have sent a letter. Defendant did neither.

**Conclusions of Law**

### Ground One, ineffective assistance of counsel regarding an appeal

Defendant's attorney gave correct advice to Defendant about the advantages and disadvantages regarding an appeal. As will be discussed ahead, Defendant's prior convictions qualified for imposition of the minimum mandatory 15 year sentence and Cassidy so advised Defendant. Defendant tried to obtain a substantial assistance motion before sentencing, and Cassidy told him that his better strategy would be to continue to try to cooperate rather than to appeal. This was a better strategy because Defendant had no viable issue to present on appeal. Defendant could have contacted Cassidy during the appeals period, but did not, demonstrating that he elected not to appeal.

Thus, the first issue identified in Flores-Ortega has not been shown. Defendant did not in fact instruct Cassidy to file a notice of appeal.

The second issue, whether Cassidy adequately consulted with Defendant, is a somewhat closer question in light of Thompson v. United States, 504 F.3d 1203 (11th Cir. 2007). Relying upon Flores-Ortega, Thompson held:

> As noted above, adequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal. *Frazer v. South Carolina*, 430 F.3d 696, 711 (4th Cir. 2005).

504 F.3d at 1206 (emphasis added by the Eleventh Circuit).

Cassidy satisfied the first two requirements. He informed Defendant of his right to appeal and he advised Defendant about the advantages and disadvantages of an appeal. Defendant had been concerned about whether the three sales of cocaine would count as three convictions, and Cassidy explained why the three convictions were properly counted. Cassidy explained to Defendant why he thought an appeal would cause the Government to withdraw from the substantial assistance process. Cassidy explained to Defendant that the better strategy would be to pursue a Rule 35 motion rather than an appeal.

Cassidy did not, however, obtain a definitive decision from Defendant right after sentencing or contact Defendant during the ten days in which to appeal. He left the decision in Defendant's hands during the appeal period, expecting Defendant to contact Cassidy if he wanted to appeal. The issue is whether this was a "reasonable effort" to determine Defendant's wishes. On the facts of this case, I conclude that it was. Cassidy adequately counseled with Defendant about the choices facing him. Having counseled Defendant that the better strategy was to cooperate, he established a procedure for Defendant to inform him if Defendant wished instead to appeal. Defendant could have placed a collect call to Cassidy's office, or he could have written a letter. Cassidy, therefore, made a reasonable effort to determine Defendant's wishes.

Assuming, however, that putting the burden of communication on Defendant was not a reasonable effort to consult (since Defendant was in jail), a second level of analysis identified by Thompson must be considered:

> Having determined that Counsel did not adequately consult with Thompson, we turn to whether, if counsel had an affirmative duty to consult, his failure to do so prejudiced the defendant. *Flores-Ortega*, 528 U.S. at 480, 484, 120 S.Ct. 1029. . . . In order to establish that he was

prejudiced by counsel's failure to file an appeal, Thompson must show that "*there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.*" *Flores-Ortega*, 528 U.S. at 484, 120 S.Ct. 1029. Because a direct appeal of a federal conviction is a matter of right, *see Rodriquez v. United States*, 395 U.S. 327, 329-30, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), we determine whether a defendant has shown that there is a reasonable probability that he would have appealed *without regard to the putative merits of such an appeal. Flores-Ortega*, 528 U.S. at 485-86, 120 S.Ct. 1029; <u>Gomez-Diaz</u>, 433 F.3d at 793.[3]

504 F.3d 1207-1208 (emphasis added).

To answer this question, one must again examine what Defendant knew right after sentencing. Defendant was upset with the length of the sentence, but the sentence was not a great surprise. He knew he would get a sentence of at least 180 months if he did not receive a 5K1.1 motion. Unlike the defendant in <u>Thompson</u>, Defendant's primary strategy was to cooperate and hope to achieve a sentence reduction. Defendant had already been pursuing the strategy of cooperation and he knew that if he appealed, he would abandon that strategy. Defendant could have called Cassidy, and if that had failed, he could have written a letter. Cassidy told Defendant to "get back" to him with his decision and Defendant did not. Under these circumstances, there is no reasonable probability that Defendant would have appealed without regard to the putative merits of an appeal. Ground one is without merit.

**Ground Two, ineffective assistance of counsel at sentencing**

Petitioner contends that the conviction listed in paragraph 1.a. in the indictment, possession of cocaine (simple possession), did not qualify as a conviction for sentencing pursuant to 18 U.S.C. § 924(e), the Armed Career Criminal Act. Doc. 49, p.

---

[3] <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 792 (11th Cir. 2005).

3.  He contends that the convictions listed in paragraph 1.c. and 1.d. (burglary of a structure and three sales of cocaine) should have counted as one conviction.  *Id.*  He also argues that the conviction in paragraph 1.c., felon in possession, did not qualify either because it is not a crime of violence.  *Id.*  Defendant faults counsel for failing to make these arguments at sentencing.

Generic burglary of a structure is a qualifying violent offense under the ACCA. United States v. Bennett, 472 F.3d 825, 832 (11th Cir. 2006).  Sale of cocaine in Florida in violation of FLA. STAT. § 893.13(1)(a)(1) is a second degree felony punishable by a term of imprisonment not exceeding 15 years.  FLA. STAT. § 775.082(3)(c) and is a qualifying offense under the ACCA.  *E.g.*, United States v. Spears, 443 F.3d 1358, 1359 (11th Cir.), *cert. denied*, 549 U.S. 916 (2006).

To qualify as offenses under the ACCA, the offenses must have been committed "on occasions different from one another."  United States v. Canty, 570 F.3d 1251, 1254-1255 (11th Cir. 2009), *quoting*, United States v. Pope, 132 F.3d 684, 689 (11th Cir. 1998).  If the offenses were committed on separate occasions, "it does not matter that the sentences were imposed upon [the defendant] on the same day."  United States v. Wilks, 464 F.3d 1240, 1244 (11th Cir.), *cert. denied*, 549 U.S. 1066 (2006).  "The successful completion of one crime plus a subsequent conscious decision to commit another crime makes that second crime distinct from the first for the purposes of the ACCA."  United States v. Spears, 443 F.3d 1358, 1360 (11th Cir.), *cert. denied*, 549 U.S. 916 (2006) (quoting Pope, internal quotation marks omitted).

Defendant had three qualifying offenses.  He was convicted of burglary and two sales of cocaine on different days.  He probably had a fourth qualifying offense, the

second sale of cocaine on May 26, 1995. Defendant has shown neither attorney error nor prejudice to the outcome as to this claim.

**Certificate of Appealability**

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

I find no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. Failure to present argument in objections may waive the argument that could have been presented.

**Conclusion**

For these reasons, it is **RECOMMENDED** that Defendant Melvin Jerome Wymes's amended motion to vacate and set aside a sentence filed pursuant to 28 U.S.C. § 2255, doc. 49, be **DENIED WITH PREJUDICE** and that a certificate of

appealability be **DENIED** pursuant to § 2255 Rule 11(a).  It is further **RECOMMENDED**

that the court **CERTIFY** that any appeal is not taken in good faith and leave to proceed

*in forma pauperis* be **DENIED**.

       **IN CHAMBERS** at Tallahassee, Florida, on March 16, 2010.


              **s/     William C. Sherrill, Jr.**
              **WILLIAM C. SHERRILL, JR.**
              **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

      **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**